**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**JAMILA PHILLIPS**                                                              **PLAINTIFF**

**v.**                                        **4:06CV00925-WRW**

**CATHIE MATHEWS,** *et al.*                                            **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendants' Motion for Summary Judgment (Doc. No. 37).  Plaintiff has

responded (Doc. No. 45), and Defendants have replied (Doc. No. 53). Also pending is Plaintiff's

Motion to Strike Reply to Response to Motion (Doc. No. 54).

Plaintiff brings this action under the Family and Medical Leave Act of 1993[1] ("FMLA"),

alleging both interference and retaliation.  For the reasons set forth below, Defendants' Motion

for Summary Judgment (Doc. No. 37) is GRANTED. Plaintiff's Motion to Strike Reply to

Response to Motion (Doc. No. 54) is MOOT.

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[2]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met: "The inquiry

performed is the threshold inquiry of determining whether there is the need for a trial -- whether,

in other words, there are any genuine factual issues that properly can be resolved only by a finder

---

[1] 29 U.S.C. §§ 2601-2619 (2000).

[2] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

of fact because they may reasonably be resolved in favor of either party."[3]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[4]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[5]  I must view the facts in the light most favorable to the party opposing the motion.[6]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[7]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[8]

## II.  BACKGROUND

Plaintiff was hired by the State of Arkansas on October 14, 2004.[9]  Plaintiff's employment

---

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[4]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[5]*Id.* at 728.

[6]*Id.* at 727-28.

[7]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted).

[8]*Anderson*, 477 U.S. at 248.

[9]Doc. No. 2.

with the Department of Arkansas Heritage ("DAH") began on Monday, April 17, 2006.[10]

Plaintiff was hired at DAH in a "Secretary II" position,[11] and she understood her main job

responsibilities to include greeting people as they entered DAH headquarters and answering the

telephones.[12]  Defendant Sharon Hacker was Plaintiff's supervisor.[13]  Defendant Hacker

reprimanded Plaintiff twice between April 17 and April 24, 2006 - - once for making too many

personal telephone calls while stationed at the front desk and once for failing to be cordial to

guests as they entered DAH.[14] DAH terminated Plaintiff's employment on April 24, 2006.[15]

On Tuesday, April 18, 2006, Plaintiff was involved in an automobile accident while on

her way to work.[16] Plaintiff called DAH and told Defendant Hacker that she had been in an

accident.[17] After the police left the scene of the collision, Plaintiff went to the emergency room.[18]

The treating physician told Plaintiff that she had back and neck strain, and suggested that she

stay home for two to three days.[19] Plaintiff declined taking a doctor's excuse for the days the

doctor recommended she stay at home, and told the doctor that because she had only recently

---

[10]Doc. No. 37, Ex. A. As a new DAH employee, Plaintiff was hired subject to a six-month probationary period. Doc. No. 37, Ex. D. Plaintiff's probationary period began on April 17, 2006. *Id*. During the six-month probationary period, Plaintiff's employment could be terminated at any time based on her overall performance. *Id*.

[11]Doc. No. 37, Ex. L.

[12]Doc. No. 37, Ex. A.

[13]Doc. No. 37, Exs. A, Q.

[14]Doc. No. 37, Ex. A.

[15]*Id*.

[16]Doc. No. 2.

[17]Doc. No. 37, Ex. A.

[18]*Id*.

[19]*Id*.

transferred to a new department, she did not want to miss work.[20]

Upon returning to work after her emergency room visit, Plaintiff told Defendant Hacker the details of the accident, but did not mention that she would need any time off work.[21] Plaintiff continued working - - in particular, answering the telephone - - throughout the day.[22] On Wednesday, April 19, Thursday, April 20, and Friday, April 21, Plaintiff reported for work, but did not mention to Defendant Hacker, or any co-worker, that she needed time off in connection with her injury from her recent car accident.[23] Plaintiff continued performing her job duties - - again, in particular answering the telephone, during those days.[24] Plaintiff also rolled heritage month posters on one of those days, but agreed with a colleague that she would not stuff the posters into the tubes because Plaintiff's back was hurting.[25]

On Thursday, April 20, or Friday, April 21, Plaintiff scheduled a doctor's appointment for Monday, April 24, at 10:45.[26] Plaintiff, at the time she made the appointment, discussed the appointment with Defendant Hacker.[27] Plaintiff and Defendant Hacker planned for Plaintiff to take an early lunch for the appointment, so that Plaintiff would take the least amount of leave

---

[20]*Id.*

[21]*Id.*

[22]*Id.*

[23]Doc. No. 37, Ex. A

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]*Id.*

without pay as possible.[28] Defendant Hacker, at some point, printed out FMLA paperwork for Plaintiff, but Plaintiff did not complete the paperwork and did not tell anyone she needed leave.[29] Plaintiff told neither Defendant Hacker nor Mathews that she felt like she needed to report to work to preserve her job.[30]

On Monday, April 24, Plaintiff was supposed to report to work at 8:00 a.m. and remain there until her 10:45 doctor's appointment.[31] On that morning, Plaintiff's car would not start.[32] Plaintiff called DAH and informed the office that her uncle was on his way to fix the car, and that she would call back once she had more information.[33] Plaintiff ultimately reported to work after her doctor's appointment, at around 12:00, on April 24.[34] Plaintiff brought her completed FMLA paperwork with her from her doctor's appointment, but did not submit the paperwork because she was given a termination letter upon her arrival to DAH.[35] The letter stated that Plaintiff was being terminated because she did not report to work until after her doctor's

---

[28]*Id.* Employees of the State of Arkansas who have accrued leave time are allowed to transfer that leave time when they move to a different agency. Doc. No. 37, Exs. A, R, S. Whether Plaintiff had any accumulated leave time when she transferred to DAH is disputed. Doc No. 37, Ex. A., Doc. No. 47.  However, whether Plaintiff had accumulated leave is irrelevant in connection with Plaintiff's FMLA claims and need not be addressed here.

[29]Doc. No. 37, Ex. A.

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35] Doc. No. 37, Ex. A.

appointment.[36] Before Plaintiff's doctor's appointment on April 24, Plaintiff did not know that she would need leave time for doctor's or other appointments - - Plaintiff knew only that she needed time off for the doctor's appointment on that day.[37]

## III. DISCUSSION

The FMLA provides reasonable leave to employees who must miss work because of their own illness, to care for family members, or to care for new children.[38] Employees can bring two types of claims under the FMLA: interference and retaliation.[39]

### A. Interefence

Interference claims are claims in which an employee alleges that her employer denied or interfered with her substantive rights under the FMLA.[40] An eligible employee may take up to twelve weeks of FMLA leave "because of a serious health condition that makes the employee unable to perform the functions of . . . her job."[41] But, an employee must provide her employer

---

[36]Doc. No. 37, Ex. F. The termination letter reads:

> As a result of your decision not to come to work until after your doctor's appointment, you are being terminated. You were informed that attendance at the front desk is very important. We agreed per our conversation Friday, April 21, that you would take an early lunch today and add that time with your doctor's visit, which would result in using the least amount of time. This agreement was made because you have no balance. Leave without pay is a very serious issue and is not to be used because an automobile won't start. I regret this has happened and I do sincerely wish you the very best.

[37]Doc. No. 37, Ex. A.

[38]29 U.S.C. § 2612(a)(1)(A)-(D).

[39]See *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

[40]*Id.*

[41]29 U.S.C. § 2612(a)(1).

notice of her intention to take FMLA leave.[42] An "employer's duties are triggered when an employee gives enough information to put the employer on notice that the employee may be in need of FMLA leave."[43]

When an employee gives notice, it is not necessary for the employee to mention by name the FMLA, but the employee must express both the need and reason for the leave.[44] In connection with the need for leave, if the need is foreseeable, an employee must give her employer no less than 30 days advance notice.[45] If the need for leave is unforeseeable, an employee must give her employer notice as soon as practicable, but within no more than two working days of learning the need for leave.[46] In connection with an employee expressing the reason for the leave, the Eighth Circuit has found that even a doctor's note releasing an employee to work only half-days was insufficient to trigger an employee's FMLA right to leave where the note did not explain the medical necessity for the leave.[47]

Plaintiff began working for Defendant DAH on April 17, 2006, and was involved in a car wreck on April 18. At the emergency room where she was treated after the accident, Plaintiff declined an excuse from a doctor suggesting she be excused from work. Plaintiff reported to work on the day of her accident, and continued working throughout the week without telling anyone that she needed leave. Further, as Plaintiff stated in her deposition, even she did not

---

[42]29 U.S.C. § 2612(e).

[43]*Thorson v. Gemini, Inc*. 205 F.3d 370, 381 (8th Cir. 2000).

[44]See 29 C.F.R. § 825.302(c).

[45]See 29 U.S.C. § 2612(e)(1),(2)(B); 29 C.F.R. § 825.302.

[46]29 C.F.R. § 825.303.

[47]*Haggard v. Levi Strauss & Co*., 8 Fed. Appx. 599, 600 (8th Cir. 2001).

know before her doctor's appointment on April 24th that she would need leave.

I cannot conclude that DAH was put on notice that Plaintiff needed FMLA leave when she did not learn of her need for leave until after she was terminated. While Plaintiff agreed with a colleague that she would not put posters into poster tubes because she was sore, this does not rise to the level of putting an employer on notice of the need for FMLA leave. If DAH was not aware of Plaintiff's need to take FMLA leave, it follows that DAH could not have denied or interfered with Plaintiff's substantive rights under the FMLA. Plaintiff did not provide DAH adequate notice; she was not on FMLA leave during her doctor's appointment.

Even if I found that DAH should have known of Plaintiff's need for FMLA leave, Plaintiff's interference claim fails. Plaintiff was hired by DAH subject to a six-month probationary period, during which Plaintiff could be dismissed at any time for poor performance. During her five days of employment at DAH, Plaintiff was reprimanded twice for inappropriate behavior. Plaintiff then did not go to work on the morning of April 24, because of car problems. DAH's termination letter clearly stated that Plaintiff was being terminated for her failure to be at work on time. Car failure is not a serious health condition under the FMLA. There are no genuine issues of material fact in connection with Plaintiff's interference claim.

## B. Retaliation

Retaliation claims are claims "in which the employee alleges that the employer discriminated against [her] for exercising [her] FMLA rights."[48] When there is no direct evidence of retaliation, an employee can prove retaliation through circumstantial evidence under the *McDonnell Douglas* burden-shifting framework.[49] Under the *McDonnell Douglas* framework,

---

[48]See *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

[49]*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006).

the plaintiff must first establish a *prima facie* case of discrimination.[50]      To establish a *prima facie* case of retaliation for taking FMLA leave, a plaintiff must show that (a) she exercised rights protected by the FMLA, (b) she suffered an adverse employment action, and (c) there was a causal connection between the exercise of her rights and the adverse employment action.[51]

Once a plaintiff has established a *prima facie* case of retaliation, the burden moves to the defendant to provide a evidence of legitimate, nondiscriminatory reason for its treatment of the employee.[52] If the employer provides evidence of a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff.[53] The plaintiff must then show that the employer's alleged legitimate reason was merely a pretext for discriminatory actions.[54] A plaintiff can prove pretext by showing that there is no basis in fact for the employer's stated reason.[55] However, an employee who requests FMLA leave is not more protected against termination for non-FMLA reasons than before she submitted the request.[56] "An employee may be dismissed, preventing her from exercising her statutory right to FMLA leave - but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."[57]

---

[50]*Id.*

[51]*Smith v. Allen Health Sys.*, 302 F.3d 827, 832 (8th Cir. 2002).

[52]*Id.* at 833.

[53]*Id.*

[54]See *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006).

[55]*EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007) (citing *Stallings v. Hussmann Corp.*, 447 F. 3d 1041 (8th Cir. 2006)).

[56]*Throneberry v. McGhee Desha County Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)).

[57]*Id.*

Plaintiff cannot succeed on her retaliation claim. First, Plaintiff never exercised her FMLA rights -- her employment was terminated before she could. Even Plaintiff had exercised her FMLA rights, there is no evidence that DAH retaliated against her. DAH terminated Plaintiff's employment not because Plaintiff went to the doctor, but because Plaintiff did not come to work before her doctor's appointment. In addition, DAH counseled Plaintiff twice within five days in connection with Plaintiff's job performance. There is no genuine issue of material fact in connection with Plaintiff's retaliation claim.

## IV. CONCLUSION

Viewed in the light most favorable to the non-moving party, there is no genuine issue of material fact in connection with either Plaintiff's interference or retaliation claim. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 10rh day of December, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE